F I L E D
United States Court of Appeals
Tenth Circuit

JUN 12 2000

PATRICK FISHER
Clerk

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

DONALD RAY BEIERLE,

          Plaintiff-Appellant,

v.

ARI ZAVARES, JOHN SUTHERS,
FRANK MILLER, MARGARET
HEIL, DALE SPENGLER, LORRI
WHITE, and BURL MCCULLAR,

          Defendants-Appellees.

No. 99-1383
(D.C. No. 99-Z-746)
(D. Colo.)

---

DONALD RAY BEIERLE,

          Plaintiff-Appellant,

v.

ARI ZAVARES, JOHN SUTHERS,
FRANK MILLER, MARGARET
HEIL, DALE SPENGLER, LORRI
WHITE, BURL MCCULLAR,
MICHAEL DUNLAP, JOHN
MCGILL, JOSE GARCIA, RICHARD
LYNNS, GARY MORGAN, ZEE
DECRY, SANDY HAMM, BECKY
LOWE, DAWN TRIPP, VERNON
MCDOWELL, COLORADO
DEPARTMENT OF CORRECTIONS,

          Defendants-Appellees.

No. 99-1530
(D.C. No. 99-Z-746)
(D. Colo.)

**ORDER AND JUDGMENT** [*]

Before **KELLY** , **McKAY** , and **HENRY** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of these appeals. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The cases are therefore ordered submitted without oral argument.

Plaintiff-appellant Donald Ray Beierle, an inmate of the Colorado Department of Corrections, appeals the district court's order dismissing his 42 U.S.C. § 1983 civil rights complaint as frivolous pursuant to 28 U.S.C. § 1915A(b)(1). Mr. Beierle also appeals the district court's denial of his motion for an injunction or in the alternative, moves this court for a preliminary injunction. We affirm in part and reverse and remand in part.

---

[*]     This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

## Facts

Because this case was dismissed before defendants were served or responded, the following recitation of the facts is that of Mr. Beierle. Since 1992, Mr. Beierle has been serving an eighteen-year sentence for sexual assault on a child. He was originally incarcerated at Fremont Correctional Facility, a medium security facility, where, on March 11, 1998, he completed phase one of the Colorado Department of Corrections' Sex Offender Treatment Program (SOTP). The SOTP staff recommended him for phase two, he signed a contract agreeing to participate in phase two, and he was placed on a waiting list to begin the program. On July 13, 1998, Mr. Beierle was transferred to Arrowhead Correctional Center, a minimum security facility, to participate in phase two of the SOTP.

At Arrowhead, Mr. Beierle was hired to work in the kitchen. He informed his supervisor that, as a Seventh-Day Adventist, he could not work on his Sabbath, sundown Friday to sundown Saturday. He alleged that his supervisor continually threatened to make him work on his Sabbath. On August 2, 1998, Mr. Beierle used the SOTP's "pull-up system" to report another inmate for talking during count. He claimed that this inmate threatened retaliation, and that following this incident, he was falsely accused of giving too much attention to a female guard, Sergeant Valerie Morrow. Mr. Beierle alleged that he attempted

-3-

to solve the problem through the SOTP's "request for group" program, but his requests were ignored. He claimed that the accusations of improper conduct toward Sgt. Morrow continued.

Finally, in a group session on October 21, 1998, various inmates accused Mr. Beierle of being in denial regarding his conduct toward Sgt. Morrow. Mr. Beierle alleged that Sgt. Morrow was sick that day and did not attend the group. Another guard, however, informed the group that neither she nor Mr. Beierle's job supervisor had ever seen any inappropriate behavior by Mr. Beierle. On October 23, 1998, Mr. Beierle's supervisor advised him that he had been labeled "a stalker," and he would no longer be able to work alone with Sgt. Morrow. This was also the time that Mr. Beierle's work schedule was changed to include his Sabbath. He complained of this change to his therapy group on October 26, 1998. His schedule was subsequently changed back to avoid his Sabbath.

On November 1, 1998, Mr. Beierle was working in the kitchen with Sgt. Morrow and Sgt. Williams, a male guard, when unbeknownst to Mr. Beierle, Sgt. Williams left early, leaving him alone with Sgt. Morrow. When Sgt. Morrow questioned him about whether he should be there alone with her, Mr. Beierle claimed he was placed in the position of either breaking the rules by leaving his

job early and unfinished, or breaking the rules by remaining alone with Sgt. Morrow. He elected to finish his work shift.

On November 10, 1998, Mr. Beierle was fired from his kitchen job and terminated from phase two of the SOTP. He alleged that on November 12, 1998, he was moved into a disciplinary unit and placed on restrictive privileges pursuant to Colo. Rev. Stat. § 17-20-114.5. [1] Mr. Beierle asserted that this was his first disciplinary write up in his eight years of incarceration. His grievance of this disciplinary action was denied. [2] On November 24, 1998, he was transferred to Buena Vista Correctional Facility, a medium security facility, where he continued to be placed in a disciplinary unit, was locked down for twenty-three hours a day, and remained on restricted privileges. In addition, he continued to be denied participation in phase two of the SOTP because he refused to admit that he was stalking Sgt. Morrow.

---

[1] Colorado Revised Statute § 17-20-114.5(1) allows any Colorado correctional facility to restrict the privileges of any inmate who does not participate in required labor, educational program, work program, or counseling.

[2] Mr. Beierle's complaint was filed after April 26, 1996, and is accordingly governed by the requirements of the Prison Litigation Reform Act of 1995. *See Green v. Nottingham*, 90 F.3d 415, 416 (10th Cir. 1996). By this Act, Congress amended 42 U.S.C. § 1997e(a) to provide that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." In a letter accompanying the denial of Mr. Beierle's step II grievance, the grievance officer stated that Mr. Beierle had exhausted the grievance process. *See* Appellant's App. at 34.

Mr. Beierle's pro se complaint set forth six claims for relief against a number of defendants including the Colorado Department of Corrections, and numerous officers and employees of Arrowhead. First, Mr. Beierle alleged that Arrowhead officers violated his First Amendment right to the free exercise of his religion by threatening to make him work at his kitchen job on his Sabbath, scheduling him to work on his Sabbath, and retaliating against him for seeking the intervention of his therapy community in changing his schedule. Second, Mr. Beierle alleged that defendants violated his due process rights under the Fifth and Fourteenth Amendments when they accused him of a crime and punished him without an accusation from the victim, a hearing, the opportunity to call witnesses, or an opportunity to defend himself. [3] Third, Mr. Beierle alleged that he was deprived of a liberty interest when he was placed on restrictive privileges, transferred to a higher security facility, put in twenty-three hour lock down, denied access to phase two of the SOTP, and denied three days of earned time each month. In his fourth, fifth, and sixth claims, Mr. Beierle alleged Eighth Amendment violations. He claimed that the Colorado Department of Corrections showed deliberate indifference by failing to adequately train its officers to deal

---

[3] Mr. Beierle maintains that Sgt. Morrow never accused him of stalking or any other inappropriate behavior. When he stated this in his grievance, he was told that this was because Sgt. Morrow had not been trained to know when she was being stalked.

with sex offenders, by allowing other inmates to disparage him and make false accusations against him, and by placing him on restrictive privileges and depriving him of his earned time.

After the district court dismissed his pro se complaint, Mr. Beierle filed a counseled motion for a preliminary injunction, requesting that the Colorado Department of Corrections be enjoined from continuing to violate his constitutional rights pending his appeal of the district court's dismissal of his complaint. In his motion, Mr. Beierle, for the first time, raised a claim alleging that the SOTP participation requirement that he admit to the stalking of Sgt. Morrow violated his Fifth Amendment right against self incrimination. The district court summarily denied this motion for the same reasons stated in its order dismissing his complaint. Mr. Beierle appeals both decisions.

## Discussion

### A.  No. 99-1383

The district court dismissed Mr. Beierle's complaint as frivolous pursuant to 28 U.S.C. § 1915A(b)(1) which requires a district court to dismiss an in forma pauperis prisoner action if it determines that the action is frivolous or malicious. An in forma pauperis action is frivolous under § 1915(e)(2)(B)(i) (formerly codified at § 1915(d)) if the claim is based on an indisputably meritless legal

theory or if it is founded on clearly baseless factual contentions. [4] *See Schlicher v. Thomas*, 111 F.3d 777, 779 (10th Cir. 1997).

"Plausible factual allegations are not frivolous . . . even if they lack evidentiary support." *Templeman v. Gunter*, 16 F.3d 367, 368 (10th Cir. 1994). The court can dismiss the complaint if the facts do not support an arguable claim. *See id.* However, an in forma pauperis complaint may not be dismissed merely because a court finds the "allegations unlikely." *Denton v. Hernandez*, 504 U.S. 25, 34 (1992). We review the dismissal of a complaint as frivolous for an abuse of discretion. *See Schlicher*, 111 F.3d at 779.

Even though they are incarcerated, prisoners retain fundamental constitutional rights. *See Wolff v. McDonnell*, 418 U.S. 539, 555 (1974). These include the right to free exercise of religion as guaranteed by the First and Fourteenth Amendments. *See id.* at 556; *see also, e.g., Werner v. McCotter*, 49 F.3d 1476, 1479 (10th Cir. 1995) (holding that "a prison system may not substantially burden a prisoner's right of free exercise in the absence of

---

[4] A civil rights complaint accompanied by a motion to proceed in forma pauperis is reviewed under 28 U.S.C. § 1915. A civil complaint filed by a prisoner seeking redress from a governmental entity is reviewed under 28 U.S.C. § 1915A. Both statutes apply here. Under either of them, a district court must dismiss the complaint prior to service if it is frivolous or malicious. *See* § 1915(e)(2)(B)(i); § 1915A(b)(1).

a compelling state interest and must employ the least restrictive means necessary to further that interest") .

Mr. Beierle's first claim alleges that defendants threatened to make him work in the prison kitchen on his Sabbath. In dismissing the claim, the district court read Mr. Beierle's complaint as stating that, even if his allegations of such threats were true, he did not allege that he was ever denied the right to observe his Sabbath in a manner dictated by his religious beliefs. On this basis, the district court correctly concluded that Mr. Beierle's claim failed to allege any significant burden on his First Amendment right to the free exercise of his religion. [5]

In three of his claims, Mr. Beierle alleged that defendants exhibited deliberate indifference to his health and safety in violation of the Eighth Amendment. The Eighth Amendment requires prison officials to "provide humane conditions of confinement," which include taking "reasonable measures to guarantee the safety of inmates." *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal quotation marks and citation omitted). An inmate claiming that officials failed to prevent harm first "must show that he is incarcerated under

---

[5] We are concerned with Mr. Beierle's allegations of threats to his religious rights. We affirm the district court on this claim, however, because the issue of whether Mr. Beierle's right to the free exercise of his religion was unconstitutionally burdened will, of necessity, be explored on remand of his retaliation claim.

conditions posing a substantial risk of serious harm." *Id*. at 834. Then [he] must demonstrate that the officials had a "'sufficiently culpable state of mind,'" *id*. (*quoting Wilson v. Seiter*, 501 U.S. 294, 297 (1991))--that is, their acts or omission arose from "deliberate indifference to inmate health or safety." *Id*. (internal quotation marks and citation omitted). Having reviewed the record, we agree with the district court that Mr. Beierle's fourth, fifth, and sixth claims did not satisfy either the subjective or objective prongs of the "deliberate indifference" standard and thus failed to state Eighth Amendment claims. *See Farmer,* 511 U.S. at 837-38.

Mr. Beierle's due process, liberty interest, and retaliation claims, however, appear to be neither legally nor factually baseless under either the § 1915(e) or § 1915A standard. The Supreme Court in *Wolff*, 418 U.S. at 557, determined that inmates were entitled to procedural due process protections in disciplinary hearings that could result in the forfeiture of good-time credits. An inmate faced with disciplinary action should be allowed to call witnesses and present documentary evidence in his defense. *See id.* at 566.

In a recent opinion, *Chambers v. Colorado Department of Corrections*, 205 F.3d 1237 (10th Cir. 2000), a panel of this court addressed the issue of whether the Colorado Department of Corrections' requirement of participation in the SOTP implicates a liberty interest under the Due Process Clause of the

-10-

Fourteenth Amendment. In *Chambers*, we considered the constitutionality of Colorado's SOTP, Colo. Rev. Stat. § 16-11.7-101, which "creates a program which standardizes the evaluation, identification, treatment, and continued monitoring of sex offenders at each stage of the criminal justice system," in order to "curtail recidivistic behavior" and to protect "victims and potential victims."

At the time he was incarcerated, Mr. Chambers was classified an S-2 sex offender as an inmate who "committed a sex offense but was not convicted of a sex offense charge." *Id.* at 1238. Participation in the SOTP was "conditioned upon the inmate's admitting he committed a sex offense; stating he has a problem in this area; and demonstrating his willingness to work on the problem." *Id.* Following his classification, Mr. Chambers did not participate in the SOTP, but was participating in other work and educational programs and, as a result, was receiving good time and earned credits of ten days a month. [6] In 1989, a SOTP case manager interviewed Mr. Chambers and determined him to be ineligible to participate in the SOTP because he refused to admit that he committed a sexual assault. As a result, his ten days of earned time credit were reduced to seven days.

---

[6] Colorado Revised Statute § 17-22.5-405(1) provides for an award of up to ten days earned time each month for an inmate who exhibits "consistent progress" in "counseling sessions" and "self-help groups."

We held that the state, through its administrative policy, had created a liberty interest in the earned time credits Mr. Chambers had been denied. *See* 205 F.3d at 1242. In sum, we stated that the Colorado Department of Corrections provided Mr. Chambers with a liberty interest in the "consequences of the mandatory label [of sex offender] which it then arbitrarily removed without affording him any opportunity to a hearing to challenge the label." *Id.* at 1243. We concluded that the consequences of the sex offender label were "a benefit which cannot be taken away without some process." *Id.*

We recognize that the facts in *Chambers* are distinguishable from those here. Mr. Beierle was labeled a sex offender from the beginning of his incarceration due to his conviction. As a result he was compelled to participate in the SOTP, a requirement that afforded him earned time credits. He admitted the conduct resulting in conviction and signed the required contract before commencing his participation in the SOTP. After he sought help with his work schedule, was accused in his therapy community of stalking Sgt. Morrow, and was reported for working alone with Sgt. Morrow,[7] he was terminated from the SOTP, an action that resulted in a loss of earned time. He did not receive a hearing or any opportunity to call witnesses. Despite the distinguishable facts, we believe

---

[7] This court is concerned with Mr. Beierle's claim that despite accusations of "stalking" Sgt. Morrow, he continued to be assigned work duties with her, regardless of whether or not another guard was present.

-12-

that, in light of the analysis expressed in *Chambers,* Mr. Beierle's due process claim survives dismissal under § 1915(e).

In addition, Mr. Beierle maintains that he was unconstitutionally required to participate in the SOTP in order to be eligible for parole. He supports this with an affidavit from Allan Stanley, a member of the Colorado Parole Board, issued after Mr. Beierle's first parole hearing. In the affidavit, Mr. Stanley stated that Mr. Beierle needed continued treatment and recommended him for phase two of the SOTP. He averred that "[t]he completion of phase two of the SOTP is a condition that must be met before the Board will consider Beierle's request for parole." R. Vol. I at 38.

In *Neal v. Shimoda*, 131 F.3d 818 (9th Cir. 1997), the plaintiff challenged the Hawaii SOTP which conditioned eligibility for parole on participation in the program. The court stated that "[t]he classification of an inmate as a sex offender is precisely the type of 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life' that the Supreme Court held created a protected liberty interest." *Id.* at 829 (*quoting Sandin v. Conner*, 515 U.S. 472, 484 (1995)). The *Neal* court determined that "the substantive predicate is the labeling of the targeted inmate as a sex offender. Once that is done, it is mandatory that the labeled inmate successfully complete the specified treatment program in order to become eligible for parole." *Id.* at 830. The court concluded

that the stigmatizing label of "sex offender" coupled with the coercive element of conditioning parole eligibility on successful completion of the SOTP create the kind of liberty deprivations requiring procedural due process.    *See id.*

In light of the facts as related by Mr. Beierle, we conclude that the district court's dismissal of Mr. Beierle's due process and liberty interest claims was premature.  By so holding, we do not speculate on or direct a result in Mr. Beierle's case.  Construing Mr. Beierle's pro se complaint liberally, we only conclude that Mr. Beierle has made a rational argument on the law and the facts to support his due process and liberty interest claims.    *See Whitney v. New Mexico*, 113 F.3d 1170, 1172 (10th Cir. 1997).  Therefore, we hold that the district court abused its discretion in finding Mr. Beierle's due process claim to be frivolous.

Next, Mr. Beierle alleged that he was the object of disciplinary retaliation by prison officials for seeking help from his therapy community to get his work schedule changed to avoid his Sabbath.  "We have held that prison officials may not retaliate against or harass an inmate because of the inmate's exercise of his constitutional rights."    *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998) (quotation omitted).  "This principle applies even where the action taken in retaliation would be otherwise permissible."    *Id*. (quotation omitted).  We have held that prisoners have a right to free exercise of religion,    *see Werner*, 49 F.3d

-14-

at 1479, and may therefore assert § 1983 claims alleging that prison officials have retaliated against them for exercising that right, *see, e.g., Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990).

We recognize that "[a]n inmate claiming retaliation must allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights." *Peterson*, 149 F.3d at 1144 (quotation omitted). We agree with the district court that Mr. Beierle's allegations are conclusory. Therefore, they may be subject to dismissal upon the defendants' filing of a motion under Fed. R. Civ. P. 12(b)(6) or a properly supported motion for summary judgment. *See Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991). Nevertheless, the case law establishing that prisoners are entitled to constitutional protection from retaliatory disciplinary action and that they may call witnesses at certain disciplinary hearings indicates that Mr. Beierle's retaliation claim is not frivolous under § 1915(e) or § 1915A.

### B. No. 99-1530

Mr. Beierle also appeals the district court's summary denial of his motion for preliminary injunction. We conclude that the denial of Mr. Beierle's motion was proper, although for different reasons than those stated by the district court. *See United States v. Sandoval*, 29 F.3d 537, 542 n.6 (10th Cir. 1994) (holding the

-15-

appellate court is free to affirm the district court on any grounds supported by the record).

Pursuant to Fed. R. Civ. P. 65(a)(1), "[n]o preliminary injunction shall be issued without notice to the adverse party." Compliance with this notice requirement is mandatory, and the rule has constitutional as well as procedural dimensions. *See Harris County, Texas v. CarMax Auto Superstores Inc.*, 177 F.3d 306, 325-26 (5th Cir. 1999). Here, the district court dismissed Mr. Beierle's § 1983 complaint as frivolous prior to service on or response from the defendants. There is no indication in Mr. Beierle's motion for preliminary injunction or in the district court's docket sheet evincing service of the motion on any of the defendants. There is also no indication that counsel entered an appearance on behalf of any defendant. Consequently, in the absence of any evidence of compliance with Rule 65(a)(1), we conclude that the district court did not abuse its discretion in denying Mr. Beierle's motion for a preliminary injunction. The same is true whether we consider Mr. Beierle's brief in this case as an appeal of the district court's order, a motion for preliminary injunction to this court, or a motion for stay pending appeal. *See* Fed. R. App. P. 8(a)(2)(C) (requiring reasonable notice of a motion for stay to all parties). [8]

---

[8] We note that the issue forming the grounds for Mr. Beierle's preliminary injunction motion--a violation of his Fifth Amendment right to be free of self incrimination--was not included in his complaint or amended complaint, and was therefore, never ruled on by the district court. Upon remand, nothing prevents

(continued...)

-16-

## Conclusion

In case No. 99-1383, we REVERSE and REMAND to the district court for service of defendants on Mr. Beierle's due process, liberty interest, and retaliation claims and for any further proceedings necessary to a just resolution of those claims. We AFFIRM the district court's judgment dismissing Mr. Beierle's remaining claims as frivolous. We also AFFIRM the district court's denial of plaintiff's motion for a preliminary injunction in case No. 99-1530.

AFFIRMED in part, and REVERSED and REMANDED in part.

Entered for the Court

Robert H. Henry
Circuit Judge

---

[8](...continued)
Mr. Beierle from filing an amended complaint which includes his Fifth Amendment claim. *See* Fed. R. Civ. P. 15.